UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ANTHONY PICA,

        Petitioner,

-against-

UNITED STATES OF AMERICA,

        Respondent.
------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
13-CV-1150 (CBA)

**AMON, United States District Judge:**

Petitioner Anthony Pica, pro se, moved for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 in connection with a 30-year sentence he is serving for conspiracy to commit robbery, attempted robbery, discharge of a firearm in connection with a crime of violence, and causing death by use of a firearm. (D.E. # 1 ("Pet.").)[1] Pica was convicted following a jury trial presided over by this Court in April 2010. By Memorandum and Order dated May 17, 2016, this Court denied the petition and declined to issue a certificate of appealability pursuant to 28 U.S.C. § 2253. (D.E. # 17 ("May 17 Order").) Currently before the Court is Pica's motion for reconsideration pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. (D.E. # 19 ("Mot. Recons.").) For the reasons discussed below, Pica's motion for reconsideration is denied.

## BACKGROUND[2]

The Court assumes familiarity with the facts and background of this case, as set forth in the May 17 Order, and only recounts those facts necessary for purposes of the instant motion. On April 29, 2008, Pica participated in a plot to rob Louis Antonelli, a jeweler with mob connections,

---

[1] Portions of Pica's petitions contain numbered paragraphs. Wherever possible, the Court cites the numbered paragraphs rather than page numbers.

[2] The facts below are taken largely from Pica's submissions to the Court. The basis for Pica's petition derives primarily from his private interactions with counsel during pretrial proceedings, and therefore there are limited segments of the record that offer relevant corroboration. The Court largely credits Pica's account for the purposes of assessing his petition. As demonstrated below, even assuming Pica's account to be true, his petition must be dismissed.

1

in a restaurant parking lot on Staten Island. (Pet. ¶¶ 3.3–3.4; D.E. # 10 ("Am. Pet.") ¶¶ 2.7–2.8.) In the course of the attempted robbery, one of Pica's confederates, Charles Santiago, shot Antonelli. (Pet. ¶ 2.3.) Antonelli died from his injuries about two weeks later. (Am. Pet. ¶ 2.6.) Pica learned there was a warrant out for his arrest in connection with Antonelli's murder in August 2008, and claims that he promptly surrendered to authorities upon discovering that information.[3] (Pet. ¶¶ 5.1–5.7.) Pica's attorney at the time was Anthony Ricco. (Am. Pet. ¶ 3.4.) Pica received a plea offer from the government on September 25, 2009; the offer was set to expire a week later, on October 2, 2009. (D.E. # 6-1 ("Plea Offer") at 2.) The offer required Pica to plead guilty to the third count of the superseding indictment, which charged Pica with Antonelli's murder. (See id. ¶ 1.) Under the offer, prosecutors would have asked the Court to impose a sentence of 30 years to life, but only if: (1) Pica accepted the deal before it expired; (2) the shooter, Santiago, also timely accepted the offer; (3) the Court accepted both Pica's and Santiago's pleas; and (4) neither Pica nor Santiago sought to withdraw their pleas. (Id. ¶¶ 2, 6.) The plea offer also included a commitment by Pica not to seek a sentence shorter than 30 years under the Federal Sentencing Guidelines, (id. ¶ 2), as well as a waiver of Pica's right to appeal or challenge his ultimate sentence, (id. ¶ 4).

Pica did not accept the offer. (Am. Pet. ¶ 3.17.) According to Pica, Ricco advocated for the deal and encouraged Pica to implicate two others in the crime as well. (Pet. ¶¶ 7.22–7.53.) Ricco allegedly indicated that Pica was likely to get life in prison under the deal unless he helped to verify the government's theory of the killing; namely, that Antonelli was intentionally killed by the mob, with the complicity of his own personal bodyguard. (Id.) Although Pica claims he repeatedly expressed his willingness to admit his own role in the crime, (see supra n.3), he also

---

[3] Pica repeatedly emphasizes his longstanding willingness to admit his role in the events that led to Antonelli's death. (See, e.g., Pet. ¶¶ 1.7, 5.4, 6.12, 7.35, 7.57, 9.6; Am. Pet. ¶¶ 1.5, 3.3.)

2

claims that he refused to cooperate with the government or to plead to details that he believed to be false, (Pet. ¶¶ 7.35–7.49). Eventually, Pica claims, this disagreement about how to proceed so thouroughly undermined his relationship with Ricco that Pica moved to have a new attorney appointed. (Id. ¶¶ 7.51–7.56, 8.1.)

The Court subsequently permitted Ricco to be replaced by a new attorney, Michael Rosen. (Id. ¶¶ 8.1, 9.1.) Rosen attempted to negotiate another plea deal, but Pica claims that the government refused. (Id. ¶¶ 9.16–9.17.) Rosen allegedly told Pica that the government wanted him sentenced to life in prison even if he pleaded guilty without a plea agreement. (Id. ¶ 9.18.) Rosen suggested Pica would likely lose at trial because his three co-defendants were going to testify, but Rosen also noted that a trial was the only way for Pica to demonstrate that Antonelli's killing was not premeditated. (Id. ¶¶ 9.19–9.21.) Pica proceeded to trial, lost on all four counts, and was sentenced by this Court to 30 years in prison. On March 1, 2013, Pica filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255, seeking relief from his conviction due to due process violations and ineffective assistance of counsel from Ricco. (Pet. at 3.) In particular, Pica claims that Ricco described the government's plea offer inaccurately and that he would have accepted the plea offer instead of going to trial if he had understood it correctly.

The Court dismissed Pica's petition in the May 17 Order. The Court first found that Pica's Fifth Amendment claim was procedurally defaulted because he did not raise it on direct appeal. (May 17 Order at 10–11.) The Court also dismissed Pica's ineffective assistance claim, finding that he was not prejudiced by proceeding to trial because he thereafter received the lowest sentence contemplated by the plea agreement he declined. (Id. at 8–10.)

In addition to habeas relief, Pica also sought leave to modify his original habeas petition, (Am. Pet.), and moved for appointment of counsel, an evidentiary hearing, and an opportunity to

conduct discovery, (Pet. at 15; Am. Pet. at 10; D.E. # 11). The May 17 Order granted Pica's motion for leave to amend his petition, but denied his requests for counsel, a hearing, and discovery. (May 17 Order at 5–7, 11–13.)

On June 3, 2016, Pica filed a motion for reconsideration of the May 17 Order. Pica's motion fails to specify any particular Federal Rule of Civil Procedure under which it falls. However, because his motion was filed within 28 days of this Court's order denying his petition, the Court construes it as a motion under Rule 59(e) to alter or amend the judgment.[4] See United States v. Clark, 984 F.2d 31, 32 (2d Cir. 1993) (explaining that a motion to reconsider a prior order denying petition for a writ of habeas corpus pursuant to § 2255 "is to be treated as a Rule 59(e) motion if filed within ten days of entry of the challenged order"); see also Fed. R. Civ. P. 59, Advisory Committee Notes (2009 amendment) (noting that the 10-day period for filing under Rule 59(e) had been expanded to 28 days).

## STANDARD OF REVIEW

A motion for reconsideration of a judgment or an order disposing of a § 2255 under Rule 59(e) of the Federal Rules of Civil Procedure permits a party to file a motion to alter or amend the judgment within 28 days after entry of judgment. Fed. R. Civ. P. 59(e); see Beras v. United States, No. 05-CV-2678 (SAS), 2013 WL 2420748, at *1 (S.D.N.Y. June 4, 2013) (Although "entry of judgment under Rule 58 of the Federal Rules of Civil Procedure is not required after an order disposing of a petition under Section 2255, because habeas proceedings represent a further step in the criminal case, not an independent civil case requiring an independent final judgment . . . a motion under Rule 59(e) to amend or correct an order disposing of a Section 2255 may still be brought, although such an order is not a [judgment].") (internal citations omitted)).

---

[4] A judgment was incorrectly entered in this case on May 17, 2016, (D.E. # 18). See Williams v. United States, 984 F.2d 28 (2d Cir. 1993).

4

"The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp. Inc., 70 F.3d 255, 257 (2d Cir. 1995). "It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998). Motions for reconsideration are also governed by Local Civil Rule 6.3, which requires that the movant file "a memorandum setting forth concisely the matters or controlling decisions which [the movant] believes the court has overlooked." Local Civil Rule 6.3.

## DISCUSSION

In his motion for reconsideration, Pica challenges the Court's conclusion that his ineffective assistance claim failed to meet the prejudice requirement. Pica argues that Ricco and Rosen provided ineffective assistance because neither fully advised him that he could plead guilty without a plea agreement, known as an "open plea." Pica first claims that Ricco never explained this option to him. (Mot. Recons. at 2, 7.) Pica also argues that even though Rosen mentioned the option of an open plea, "Rosen never fully discussed this option, as to the pros and cons to doing so, and whether the offer to plead guilty 'straight up' was a good option and whether or not he advises him to do so and why." (Id. at 2–6.)

For the reasons discussed below, the Court finds that Pica has failed to meet his burden to alter the Court's conclusions in the May 17 Order.

## I. Rosen Did Not Provide Ineffective Assistance of Counsel

As a threshold matter, the Court cannot properly consider Pica's arguments concerning Rosen's ineffectiveness. A motion to reconsider is an improper means to raise new grounds for habeas relief that could have been presented in the earlier habeas proceeding. Rivera v. United States, 131 F.3d 131, 131 (2d Cir. 1997). A Rule 59(e) motion "is not intended as a vehicle for a party dissatisfied with the Court's ruling to advance new theories that the movant failed to advance in connection with the underlying motion . . . ." Parrish v. Sollecito, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003); see also Seinfeld v. Worldcom, Inc., No. 06-CV-13274 (DLC), 2007 WL 1573870, at *1 (S.D.N.Y. May 31, 2007) ("A motion for reconsideration may not treat the court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's rulings." (internal quotation omitted)); Weiss v. El Al Israel Airlines, Ltd., 471 F. Supp. 2d 356, 358 (S.D.N.Y. 2006) ("A motion for reconsideration is not an opportunity for a losing party to advance new arguments to supplant those that failed in the prior briefing of the issue.").

Here, Pica failed to argue in either his original or amended habeas petitions that Rosen was ineffective for failing to advise him of the pros and cons of pleading guilty without a plea agreement, so the Court will not consider this argument now. To the extent that Pica's habeas petitions address the issue of an open plea at all, Pica's original habeas petition states that "Mr. Rosen further advised me that he believed the government was going to do everything in their power to make sure I got a life sentence even if I entered a guilty plea with no plea agreement." (Pet. ¶ 9.18.) This allegation suggests that Rosen did, in fact, discuss the consequences of entering an open plea, which undermines Pica's current arguments in his motion for reconsideration.

6

## II. Ricco Did Not Provide Ineffective Assistance of Counsel

In his motion for reconsideration, Pica also contends that "Attorney Ricco failed to ever even mention [entering an open plea] as an option." (Mot. Recons. at 7.) This is the same claim that Pica raised in his original habeas petition, (see Pet. ¶ 7.52 ("I believe Mr. Ricco should have advised me that I still had the option of entering a guilty plea with no plea agreement.")), which the Court denied in the May 17 Order, (see May 17 Order at 9 n.9). The Court reasoned that even assuming Ricco did not advise Pica about the option of entering an open plea, Pica was not prejudiced because Pica admits that his next attorney, Rosen, apprised him of that option before Pica elected to go to trial. (Id.)

It is well-settled that Rule 59 "is not a vehicle for relitigating old issues." Sequa Corp., 156 F.3d at 144. The moving party must instead identify "controlling decisions or data that the court overlooked [and] that might reasonably be expected to alter the conclusion reached by the court," Shrader, 70 F.3d at 257, which Pica has failed to do. Rather, in his motion for reconsideration, Pica merely repeats the claim in his original habeas petition against Ricco. Although Pica's motion for reconsideration raises the new argument that he was prejudiced by Rosen's failure to inform him of the pros and cons of pleading guilty without a plea agreement, this claim is distinct from Pica's ineffective assistance claim concerning Ricco. Even if Ricco was ineffective for not advising Pica about the open plea option, Pica thereafter retained Rosen as new counsel and still had the option of pleading guilty without a plea agreement. The Court accordingly concludes that Pica has not identified a basis for reconsideration.

## CONCLUSION

For these reasons, Pica's motion for reconsideration is denied. Because Pica has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. See 28 U.S.C. § 2253(c)(2). The Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Dated: March 20, 2017
Brooklyn, New York

s/Carol Bagley Amon
Carol Bagley Amon
United States District Judge